UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
COVINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff/Respondent, | ) | Criminal Action No. |
| | ) | 2:18-0022-DLB-MAS-1 |
| v. | ) | and |
| | ) | Civil Action No. |
| ASHLEY ROMAN, | ) | 2:20-0032-DLB-MAS |
| | ) | |
| Defendant/Movant. | ) | |
| | ) | |

## REPORT & RECOMMENDATION

This matter is before the undersigned on Petitioner Ashley Roman's ("Roman") Motion to Vacate, Set Aside, or Correct a Sentence pursuant to 28 U.S.C. § 2255. [DE 71].[1] Roman alleges that her trial counsel was ineffective. The United States responded in opposition. [DE 83]. The Court conducted an evidentiary hearing, with Roman participating via videoconference, on October 5, 2020. [DE 96 (Minutes), DE 98 (Transcript)]. Based on review of the full record, the Court recommends denial of Roman's § 2255 motion for the reasons here discussed.

### I.     RELEVANT FACTUAL BACKGROUND

On July 26, 2018, Roman appeared before the Court on an Indictment alleging various methamphetamine trafficking and related firearm offenses. [DE 1 (Indictment), DE 9 (Minutes)]. The grand jury returned a Superseding Indictment in November 2018 that modified the charged substances and quantities. [DE 24]. On January 17, 2019, Roman pleaded guilty to Counts 1 and 5 of the Superseding Indictment, charging her with conspiring to distribute fifty or more grams of methamphetamine (in violation of 21 U.S.C. §§ 841(a)(1) and 846) and possessing a firearm in

---

[1] Record citations reference the underlying criminal docket.

1

furtherance of a drug trafficking offense (in violation of 18 U.S.C. § 924(c)), respectively. [DE 47 (Minutes), DE 48 (Plea Agreement)].

Importantly, Roman's signed plea agreement included a specific waiver of various appeal rights:

> The Defendant waives the right to appeal the guilty plea and conviction. The Defendant also waives the right to appeal any sentence unless that sentence exceeds both the statutory minimum sentence and the low end of the advisory guideline range adopted by the Court. Except for claims of ineffective assistance of counsel, the Defendant also waives the right to attack collaterally the guilty plea, conviction, and sentence. In return, the United States agrees that it will not seek a term of imprisonment greater than the low end of the advisory guideline range adopted by the Court, including any modifications for statutory minimums.

[DE 48, at Page ID # 122–23, ¶ 10]. The United States and the Court both detailed the import and effect of the above waiver during Roman's rearraignment colloquy. [DE 77 (Rearraignment Transcript), at Page ID # 255–56, 265–66]. After the Court outlined the rights subject to waiver, Roman confirmed that she understood the waiver provision, had discussed it with her attorney, and in fact intended to waive the identified appeal and collateral attack rights. [DE 11, at Page ID # 266]. The Court subsequently found Roman's entry into the waiver agreement knowing, voluntary, and intelligent. [*Id.* ("The Court finds the waivers in paragraph 10 are knowing and voluntary and that Ms. Roman understands the consequences of those waivers.")].

At sentencing, Roman was subject to statutory minimum incarceration terms of ten years (120 months) on Count 1 and five years (60 months) on Count 5, to run consecutively. *See* 21 U.S.C. § 841(b)(1)(A)(viii); 18 U.S.C. 924(c)(1)(A)(i). With a total offense level of 29 and a criminal history category of V, the Count 1 guideline range was 140 to 175 months. [DE 79, at Page ID # 280]. *See* U.S.S.G. § 5A. The Count 5 guideline called for the statutorily required 60 consecutive months. *See* U.S.S.G. § 2K2.4(b). After considering the 18 U.S.C. § 3553(a) factors, the Court varied downward and imposed the consecutive statutory minima as to both counts,

totaling 180 months' imprisonment, with five years of supervised release to follow. [DE 70 (Judgment)]. Given the sentencing outcome, the Court reiterated that Roman's appeal waiver would apply. [DE 79, at Page ID # 290]. Roman did not file an appeal. In March 2020, Roman timely filed the instant § 2255 motion. [DE 71]. The Government opposed the motion [DE 83], and Roman responded [DE 86].

The Court held an evidentiary hearing on October 5, 2020, with Roman participating via videoconference.[2] [DE 96 (Minutes), DE 98 (Transcript)]. The hearing was limited to the discrete issue of whether Roman in fact directed her trial counsel to file a notice of appeal. The Court appointed Hon. Mary Ann Miranda for the limited purpose of representing Roman at the evidentiary hearing. [DE 88]. *See* Rule 8(c) of the Rules Governing Section 2255 Proceedings in the United States District Courts.[3] The Court heard testimony from both Roman and former defense counsel, Hon. Mary P. Rafizadeh. [DE 97]. The issues Roman presents in her petition are now fully ripe for review.

---

[2] Significant custodial transport delays stemming from the COVID-19 pandemic necessitated Roman's virtual appearance at the hearing. The Court scheduled and conducted the proceeding as soon as feasible after the required videoconferencing technology became available at Roman's facility. *See* Rule 8(c) of the Rules Governing Section 2255 Proceedings in the United States District Courts (requiring the Court to conduct any evidentiary hearing "as soon as practicable after giving the attorneys adequate time to investigate and prepare"). Notably, § 2255 affords no right to physical presence at an applicable evidentiary hearing. *See* 28 U.S.C. § 2255(c); *see also Pola v. United States*, 778 F.3d 525, 535 (6th Cir. 2015) ("see[ing] no reason why the district court cannot use telecommunication and video technology so that [a defendant] may testify and appropriately participate" at a § 2255 evidentiary hearing). Balancing the relevant interests, the Court elected to proceed with Roman present virtually, rather than delay the hearing further (and perhaps indefinitely) pending Roman's safe transport from FCI Tallahassee to the Eastern District of Kentucky.

[3] The Court specifically noted that Ms. Miranda's representation of Roman terminated at the conclusion of the October 5 evidentiary hearing. [DE 96]. Pursuant to Rule 72(a), Roman has since filed a motion seeking the District Judge's review of this "ruling" terminating Ms. Miranda's limited appointment. [DE 100].

## II.  **LEGAL FRAMEWORK**

Under § 2255, a federal prisoner may obtain relief if his sentence violates the Constitution or federal law, the federal court lacked jurisdiction to impose such sentence, or the sentence exceeds the maximum authorized by law. 28 U.S.C. § 2255(a); *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003) ("In order to prevail upon a § 2255 motion, the movant must allege as a basis for relief: '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" (quoting *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001))). A constitutional basis for § 2255 relief requires "an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)). Any non-constitutional error must constitute a "'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990). A § 2255 movant typically must prove any factual assertions by a preponderance of the evidence. *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (*per curiam*).

One class of alleged constitutional error is ineffective assistance of counsel ("IAC"), in violation of the Sixth Amendment. The standard outlined in *Strickland v. Washington*, 466 U.S. 668 (1984), governs IAC claims. To prevail, a movant must prove (1) that defense counsel's performance was deficient, and (2) that the demonstrated deficiency prejudiced the movant. *Id*. at 687. To establish deficient performance, a movant must show that "counsel's representation fell below an objective standard of reasonableness." *Id*. at 687–88. "Judicial scrutiny of counsel's performance must be highly deferential[,]" and the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

A prejudice showing requires a "reasonable probability that, but for counsel's errors, the judicial outcome would have been different." *Id*. at 694–95. The Court "must consider the totality of the evidence" in assessing prejudice. *Id.* at 695. The movant must satisfy both prongs of the *Strickland* analysis, but courts need "not address both components of the deficient performance and prejudice inquiry 'if the defendant makes an insufficient showing on one.'" *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004); *Strickland*, 466 U.S. at 697.

### III. ANALYSIS

Broadly speaking, Roman raises two issues: (1) whether Roman's purported mental state at the time of rearraignment rendered her guilty plea invalid; and (2) whether trial counsel was ineffective for failing to file a notice of appeal on Roman's behalf following sentencing. For the reasons that follow, the Court finds no merit in either argument.

**A. ROMAN'S GUILTY PLEA WAS KNOWING, VOLUNTARY, AND INTELLIGENT.**

Roman contends that "[a]t the time of the plea colloquy, this Court, counsel for the government and former defense counsel all knew that the Defendant Roman was suffering from drug addiction, lack of medical care, depression, feelings of guilt [from the loss of her three kids], thoughts of suicide and that Roman was bipolar." [DE 71-2, at Page ID # 225 (addition in original)]. Thus, she claims that her "guilty plea was clearly obtained in violation of due process and therefore invalid." [*Id.*]. In support, Roman references a "pre-trial" *pro se* letter claiming various mental health difficulties and seeking an evaluation [*see id.*]; the letter, though, is dated June 24, 2019, and postmarked as of the following day—well after Roman's January 2019 guilty plea. [DE 67]. Lastly, Roman asserts that the Court should have taken greater care to ensure plea voluntariness, where a "defendant has recently consumed a potentially impairing substance." [DE 71-2, at Page ID # 224].

"In order for a guilty plea to be constitutional it must be knowing, intelligent, voluntary, and made with sufficient awareness of the relevant circumstances and likely consequences." *Byars v. Gidley*, No. 16-2485, 2017 WL 4956919, at *2 (6th Cir. July 3, 2017) (citing *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005)). "Courts evaluate the voluntariness of a guilty plea in light of all relevant circumstances surrounding the plea." *Id.* Roman's sworn statements in open Court during her rearraignment hearing flatly contradict each attack on the validity of her plea. Critically, "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Consequently, "[t]he representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Id.* at 73–74. Later contrary, "conclusory allegations unsupported by specifics" are typically unpersuasive. *Id.* at 74. "The record of a plea colloquy outweighs a petitioner's 'alleged subjective impression.'" *Byars*, 2017 WL 4956919, at *2 (quoting *Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir. 1999)).

District Judge Bunning thoroughly and carefully probed Roman's understanding of the plea agreement, the nature of the charges, and all other Rule 11 topics. Judge Bunning specifically questioned whether Roman had adequate opportunity to review the discovery with her lawyer and to fully discuss all case options and consult with counsel before deciding to plead guilty. [DE 77, at Page ID # 248]. Roman, under oath, responded affirmatively to these queries. [*Id.*]. Judge Bunning further questioned whether Roman was then under the influence of any medications or substances; Roman responded that she was not. [*id.*]. Lastly, the Court asked defense counsel whether, based on her personal experience working with Roman throughout the case, she perceived any potential competency concerns. [*Id.*]. Counsel replied that she had "none at all." [*Id.*]. Based on these responses, Judge Bunning explicitly found that Roman was "competent and capable of

entering an informed plea[.]" [*Id.*, at Page ID # 272]. The Court determined that Roman's "plea of guilty [wa]s knowing and voluntary" under the circumstances. [*Id.*].[4] Where, as here, the record confirms that "the court has scrupulously followed the required procedure, the defendant is bound by his statements in response to that court's inquiry." *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986).

Further, consistent with the plea colloquy transcript, Ms. Rafizadeh has affirmed in this collateral proceeding that she had no reason to doubt Roman's competency: "At no point during the representation did counsel believe that Ms. Roman was incapable of participating in her defense. In fact, she was very engaging. She was able to express the charges, her concerns, and her opinions of every aspect." [DE 83-1 (Affidavit)]. Counsel further states that "[t]here was no time during any discussion that Ms. Roman exhibited an[y] deficiency or lack of understanding[,]" nor did Roman ever "appear to be confused, or forced, or under an[y] type of duress about the plea offer, or the consequences of her decision to enter a plea." [*Id.*]. Counsel's affirmations, coupled with Roman's own sworn statements during her plea colloquy, contrast sharply with Roman's current assertions concerning her mental state at the time of rearraignment.

Roman's current representations as to alleged mental health issues at the time of her plea are insufficient, without more, to overcome the weight of contrary evidence. *See Byars*, 2017 WL 4956919, at *2 (concluding that the defendant's alleged "pressure from his attorneys and stress from his mother's recent death" at the time of rearraignment were "precisely the sort of alleged subjective impressions that cannot countervail a valid plea without more"); *Jones v. United States*, No. 3:12-CV-599, 2013 WL 392600, at *9 (M.D. Tenn. Jan. 30, 2013) (finding that, where the

---

[4] The Court also observes that Roman was a high school graduate with at least some college coursework completed at the time of her plea. [*Id.*, at Page ID # 247]. Such educational experience further indicates informed understanding of the plea negotiation and colloquy processes.

7

defendant's "own statements under oath" showed that she "was competent at the time she entered her plea, she understood what was happening, and she voluntarily chose to plead guilty[,]" the facts that "she may have been depressed and even 'overwhelmed[]'" did "not prove that she was mentally incompetent"); *United States v. Brown*, 752 F. App'x 309, 315 (6th Cir. 2018) (holding that "[t]he district court was not wrong to find that [the defendant's] emotional stress did not prevent him from understanding the nature of his plea[,]" where his "own counsel determined that he did not require a mental health evaluation prior to entering his guilty plea" and the district court questioned him about his mental state during the plea colloquy); *Miles v. Dorsey*, 61 F.3d 1459, 1470 (10th Cir.1995) ("Although deadlines, mental anguish, depression, and stress are inevitable hallmarks of pretrial plea discussions, such factors considered individually or in aggregate do not establish that petitioner's plea was involuntary.")  On balance, and per the applicable case law, the record does not support (indeed, it refutes) Roman's claim of plea involuntariness.

Likewise, the record lacks support for any contention that defense counsel was ineffective for failing to investigate or question Roman's competency.  As discussed, there is no credible proof that defense counsel knew or should have known that Roman was suffering from a legally incapacitating mental health issue at the time of her guilty plea.  Indeed, the evidence does not preponderantly show that Roman was suffering from such a defect.  Accordingly, Roman has not demonstrated that counsel rendered constitutionally deficient performance on this front under the *Strickland* rubric.  Nor, importantly, has Roman offered any evidence to suggest that she would have been found incompetent, or that she ultimately would have chosen not to plead guilty, had counsel explored the alleged mental and emotional health issues.  *See Campbell v. United States*, 686 F.3d 353, 357 (6th Cir. 2012) (observing that "[i]n a guilty plea context the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded

guilty and would have insisted on going to trial"). Roman's showing is thus insufficient as to both *Strickland* prongs.

For the reasons here discussed, Roman's claims related to plea validity merit no § 2255 relief.

**B.     ROMAN'S COUNSEL WAS NOT INEFFECTIVE FOR FAILING TO INITIATE AN APPEAL.**

In the memorandum accompanying her § 2255 motion, Roman claimed that "[s]hortly after sentencing," she "told her trial counsel that she wished to appeal." [DE 71-2, at Page ID # 222]. Per Movant, "[i]nstead of filing a notice of appeal, counsel informed Roman that an appeal would be 'problematic' given Roman's appeal waiver." [*Id.*]. Notably, "[t]he failure to perfect a direct appeal, in derogation of a defendant's actual request, is a *per se* violation of the Sixth Amendment" and satisfies both prongs of the *Strickland* test. *Campbell v. United States*, 686 F.3d 353, 358 (6th Cir. 2012). "[B]ecause such a failure on the attorney's part deprives the defendant of any counsel whatsoever," prejudice is categorically presumed, regardless of any potential appeal merits. *Id.*; *see also Roe v. Flores-Ortega*, 528 U.S. 470, 484 (2000). This is true even where a defendant has waived some or even all of her appeal rights in a plea agreement. *Campbell*, 686 F.3d at 359.

The key factual inquiry is, thus, whether Roman actually requested an appeal. *Id.* "When a defendant presents an affidavit containing 'a factual narrative of the events that is neither contradicted by the record nor inherently incredible' and the government offers nothing more than 'contrary representations' to contradict it, the defendant is entitled to an evidentiary hearing." *Pola*, 778 F.3d at 532–33 (quoting *Huff v. United States*, 734 F.3d 600, 607 (6th Cir.2013)). The

Court held such a hearing to explore the topic of Roman's alleged appeal request.[5]  Critically, Roman's testimony at the evidentiary hearing repudiated the chronology claimed in her § 2255 motion memorandum.  She clarified that she never successfully communicated with Ms. Rafizadeh following the sentencing hearing and, thus, she did not make any post-sentencing request for an appeal.  [DE 98, at Page ID # 408].  Rather, Roman testified that she simply understood, from conversations with counsel around the time of her guilty plea, that she would not be able to appeal.  [*Id.*, at Page ID # 404].

---

[5] As noted, the Court conducted the hearing via videoconference.  28 U.S.C. § 2255 plainly states that a "court may entertain and determine [a habeas] motion without requiring the production of the prisoner at the hearing."  28 U.S.C. § 2255(c).  The Sixth Circuit has previously endorsed the use of videoconference in conducting evidentiary hearings in the context of § 2255.  *Pola*, 778 F.3d at 535 ("We also see no reason why the district court cannot use telecommunication and video technology so that [petitioner] may testify and appropriately participate.").  Moreover, the current proceeding is civil in nature, not criminal.  Consequently, as discussed in *Shifflett v. United States*, the Confrontation Clause of the Sixth Amendment does not apply to § 2255 hearings because though they "arise out of criminal prosecutions by their nature, they are in fact civil actions."  No. 7:06-cv-497, 2007 WL 1555738, at *1 (W.D. Va. May 22, 2007) (citing 28 U.S.C § 2255).  Petitioners do not have a right to in-person hearings in a civil proceeding.  *See Gould Elecs. Inc. v. Livingston Cty. Rd. Comm'n*, 2020 WL 3717792 (E.D. Mich. June 30, 2020) (allowing a civil bench trial to be conducted by videoconference under Fed. R. Civ. P. 43(a)).  The Court does not believe conducting the hearing by videoconference would hinder the representation or defense of a § 2255 petition.  Practically, videoconferencing also allows the Court to meet Rule 8(c)'s requirement that the "judge must conduct the hearing as soon as practicable after giving the attorneys adequate time to investigate and prepare."  Rule 8(c) of the Rules Governing Section 2255 Proceeding.  Additionally, this Court is "mindful of, and sensitive to, the 'unprecedented magnitude of the COVID-19 pandemic and the extremely serious health risks it presents.'"  *United States v. Isaacs*, 2020 WL 1695155, at *3 (S.D. Ohio Apr. 7, 2020) (citation omitted).  The Eastern District of Kentucky has adopted the videoconferencing recommendations provided in the Coronavirus Aid, Relief, and Economic Security Act, or CARES Act.  *See* General Order No. 20-10 (extending prior General Order allowing the use of videoconferencing for events listed in Section 15002(b) of The CARES Act, H.R. 748).  Thus, requiring Roman's physical presence for the hearing would not only unduly burden judicial resources and prevent Roman from getting a timely hearing,  but also increase the risk of spreading COVID-19.  *See Gould Elecs. Inc.*, 2020 WL 3717792, at 4–5* (mentioning the COVID-19 pandemic as a compelling circumstance justifying videoconference technology).  Balancing these concerns, videoconferencing was the best method for conducting Roman's evidentiary hearing.

Per Roman, though she tried to call Ms. Rafizadeh between one and ten times while detained at the local jail following sentencing, she did not reach her counsel and was unable to leave a message. [*Id.*, at Page ID # 404–07].[6] Roman further testified that her grandmother attempted to call Ms. Rafizadeh. [*Id.*, at Page ID # 405]. Roman stated, however, that she did not attempt to contact Ms. Rafizadeh via letter or attempt to contact the Court directly after sentencing. [*Id.*]. Ms. Rafizadeh testified that Roman never asked her to file a notice of appeal in this case. [*Id.*, at Page ID # 417]. Ms. Rafizadeh further confirmed that she was unable to accept collect calls on her cellphone and, thus, did not receive any voicemails from Roman during the course of the representation. [*Id.*, at Page ID # 418]. Finally, Ms. Rafizadeh recalled no communication (oral or written) with Roman's family members following sentencing, despite ability to receive voicemail messages from them. [*Id.*, at Page ID # 420].

The undisputed record demonstrates that Roman did not actually request an appeal at any time. It further confirms that neither Roman nor her family successfully communicated with Ms. Rafizadeh in any manner following Roman's sentencing hearing. Moreover, and contrary to Roman's position at the evidentiary hearing, defense counsel did not have an affirmative duty to initiate a consultation with Roman after sentencing under the specific circumstances of this case. Counsel is constitutionally required to consult with a defendant about an appeal only "when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Flores-Ortega*, 528 U.S. at 480. The Court must consider "all the information counsel knew or should have known" in considering

---

[6] Roman explained that inmates are unable to leave voicemails from facility phones, as their calls must be made collect or by using prepaid minutes.

11

whether counsel had a duty to consult with the defendant. *Id.* Further, "[a]lthough not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings." *Id.* Other relevant factors include "whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights." *Id.*

All considerations here indicate that Ms. Rafizadeh did not know, and could not reasonably have known, that either Roman specifically or a rational defendant in Roman's position would have sought an appeal. As discussed, Roman knowingly, intelligently, and voluntarily entered a valid guilty plea. As a part of that plea, Roman agreed to waive all direct appeal rights concerning her plea and conviction. [DE 48, at Page ID # 122–23, ¶ 10]. She further waived her right to appeal the sentence, so long as the sentence did not exceed *both* the statutory mandatory minimum *and* the bottom of her guideline range. [*Id.*]. Roman retained only the right to raise an ineffective assistance of counsel claim in a collateral attack—as, in fact, she here does. [*Id.*]. In exchange for Roman's agreed waivers, the United States agreed not to seek a sentence greater than the bottom of the applicable guideline range. [*Id.*]. As previously noted, the Court ensured Roman's awareness and understanding of the waiver details before accepting her guilty plea. The plea agreement further confirmed Roman's understanding of the applicable statutory minimum penalties—120 months' incarceration on Count 1, followed by 60 consecutive months' incarceration on Count 2, for a total of 180 months' incarceration.

At sentencing, the applicable guideline range for both Counts was 200 to 235 months' incarceration (comprising the range of 140 to 175 months as to Count 1 and the consecutive 60 months as to Count 3). The Court ultimately varied downward and imposed the mandatory

minimum sentence of 180 months' incarceration. [DE 70]. The Court could not, absent circumstances not present in this case per the record, have varied below the statutory mandatory minimum and imposed any lesser term of imprisonment. Accordingly, all of the *Flores-Ortega* factors weigh decidedly against finding any constitutionally imposed consultation duty in this case. Critically, Roman entered a guilty plea, she waived all direct appeal rights (provided the sentence did not exceed *both* the statutory and guideline minima), and she received a sentence even lower than that potentially contemplated in her plea agreement. Indeed, Roman received the lowest possible sentence statutorily available to her. Given the utter lack of nonfrivolous appeal issues, the record does not support a finding that Roman or any rational defendant would have sought an appeal under the circumstances.[7] Accordingly, Ms. Rafizadeh did not have an affirmative duty to consult with Roman about an appeal, and she did not render deficient performance by failing to do so.[8]

Nor, in any event, has Roman shown prejudice stemming from defense counsel's failure to consult with her about an appeal. "[T]o show prejudice in these circumstances, a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Flores-Ortega*, 528 U.S. at 484. Though the deficient performance and prejudice inquires substantially overlap, they are not

---

[7] As a valid and applicable waiver deprives an appellate court of jurisdiction to review all matters within its scope, *see, e.g.*, *United States v. Keesee*, 275 F. App'x 488, 491 (6th Cir. 2008), the sole issue that Roman could have raised on appeal would have been waiver validity. Given the evidence of record (particularly Roman's sworn statements during the Court's careful plea colloquy), such an attack on the appeal waiver surely would have been frivolous.

[8] Nor, the Court tangentially notes, did the District Court err by declining to advise Roman of (inapplicable) appeal rights. *See Everard v. United States*, 102 F.3d 763, 766 (6th Cir. 1996) ("hold[ing] that when a defendant waives the right to appeal his sentence in a valid plea agreement, he cannot have his sentence vacated and his case remanded for notice as to the right to appeal his sentence and for resentencing solely on the ground that the district court failed to inform him of a right that did not exist").

13

necessarily coextensive. Still, given the absence of nonfrivolous appeal bases and Roman's stated (under oath) understanding of the applicable appeal waiver, there is no indication that, after being properly advised about her appeal options in a consultation with counsel, Roman would have elected to pursue an appeal. *Id.* at 486 (framing the prejudice inquiry as asking whether a defendant, had she "received reasonable advice from counsel about the appeal, [ ] would have instructed [ ] counsel to file an appeal"). Given the valid and applicable appeal waiver, per the record, there is no proof that Roman actually would have requested that Ms. Rafizadeh file an appeal after being accurately advised about her appeal prospects and options. Roman's testimony concerning attempts to contact Ms. Rafizadeh to discuss an appeal are inadequate, alone, to show that Roman indeed would have pursued an appeal following such a consultation.[9] Roman thus cannot establish prejudice.

Because Roman has not carried her burden as to either *Strickland* prong, the Court does not find defense counsel constitutionally ineffective for failing to file, or to consult with Roman concerning filing, an appeal in this case.

### IV. <u>CERTIFICATE OF APPEALABILITY</u>

A certificate of appealability ("COA") shall issue only if a defendant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473,484 (2000) (addressing issuance of a certificate of

---

[9] Further, despite Roman's consistently oversimplified characterization of her appeal waiver understanding—namely, merely that she could not appeal—the rearraignment record confirms that Roman fully understood the waiver specifics and nuances. Relatedly, to the extent Roman claims that counsel's pre-plea advice concerning the waiver was inaccurate or inadequate, such a contention merits no § 2255 relief in light of the careful Rule 11 colloquy and the Court's detailed waiver description. *See Ramos v. Rogers*, 170 F.3d 560, 565 (6th Cir. 1999) (noting that a "proper colloquy can be said to have cured any misunderstanding [the defendant] may have had about the consequences of his plea[]").

14

appealability in the context of a habeas petition filed under 28 U.S.C. § 2254, which legal reasoning applies with equal force to motions to vacate brought pursuant to 28 U.S.C. § 2255). In cases where a district court has rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists would not debate the denial of the Defendant's § 2255 motion or conclude that the issues warrant further review. *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Based on the full record, inclusive of all testimony at Roman's evidentiary hearing, there is not a reasonably debatable question either as to the validity of Roman's guilty plea or as to the effectiveness of defense counsel's assistance. Accordingly, it is **RECOMMENDED** that a certificate of appealability be **DENIED** upon the District Court's entry of its final order in this matter.

## V.  CONCLUSION

For the reasons stated in this decision, the Court **RECOMMENDS** that:

1) the District Court **DENY**, with prejudice, Defendant's § 2255 motion [DE 71] as to all claims raised; and

2) the District Court **DENY** a certificate of appealability as to all issues, should Roman seek one.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of said statute. As defined by § 636(b) (1), Fed. R.

Civ. P. 72(b), Fed. R. Crim. P. 59(b), and local rule, within fourteen days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court.

Entered this the 9th day of November, 2020.



Signed By:
Matthew A. Stinnett
United States Magistrate Judge